Case number 23-3738 Ken Lick Coal Company et al. v. OWCP et al. Arguments not to exceed 15 minutes per side. Mr. Prasad Turi, you may proceed. Good morning. Good morning, Mr. Chief Judge Sutton. And may it please the court, I'd like to reserve three minutes for rebuttal. This case is straightforward. Petitioner asks that this court remanded administrative law judge's decision rendered in 2021, because that decision was based on his misinformed belief of the law, which told him he could not accept withdrawal of a stipulation made in a prior denied claim more than 10 years earlier. The court should grant the petition. It is a black letter, common law principle, that intervening changes and controlling law provide an exception. Why is common law relevant here? Isn't this just about the meaning of a regulation? No. Meaning of, I can be more specific, the regulation 7.2.5, 3.09C- or C, whichever one it is, C-5? Yes, Judge Murphy. Common law matters for a few reasons. First of all, the director himself agrees that that rule is not ironclad. And that, he says so in his answering brief, Kenlick was entitled to relief by showing exceptional circumstances. He says he's- So where do you, so I agree with you that they have said that. Is that just a gloss, you think, that they've just ignored it? The board has itself just ignored this language? No, Judge Murphy, because when a common law principle is well-established, the courts take it as a given that Congress has legislated with that expectation, with an expectation that that common law exception will apply. That's from the Sixth Circuit's case in Enrique Brookover, 352F3D1083. And we see this in the Black Lung Benefits context all the time. For instance- Why doesn't, so yeah, I think I get that point. And I'm still a little confused about the nature of this. Why? So traditional res judicata principles, claim preclusion should bar the second claim. So is this an exception to claim preclusion that the DOL has adopted, that you're allowed to bring secondary claims in certain circumstances? Yes, Judge Murphy. And in fact, I think you struggle with this in the Salmons versus National Mining case that we submitted to this court some years ago. We're not challenging the fact at this stage that these issues, that the gentleman was allowed to bring a subsidiary claim. The regulations do provide for, I said subsidiary, I meant to say a second claim. We call it a subsequent claim. So that's not in dispute here. But what is important to your honor's question is that we do read in these common law principles. We've done it in the Black Lung context. Section 725.418, for instance, talks about certain deadlines that have to be followed. But we read in, except extraordinary circumstances, there's a precedent for that. We do the same thing in the context of equitable tolling. We do it in the same context. I mean, we can go on and on. And so yes, 309C5 is not ironclad. I think all the parties agree to that effect. And that's very important because what we have here, again, is an error of law. And I want to make this very clear. The question of whether the judge exercised his sound discretion is a misnomer. In fact, what we have to do is we have to look beyond just this idea, broadly speaking. OK, it's committed to sound discretion to withdraw stipulations to appreciate something that this court has also appreciated in a case called US v. Ford, which we cite. Here, the ALJ's refusal to withdraw the stipulation was based on a legal determination that he lacked authority to do that. And that is reviewed de novo. And that's extremely important because at least as far as the judge was concerned, as far as the Department of Labor is concerned, this Shepard case represents an intervening change in law as it relates to Section 101A32. Now, we disagree with that. We think Shepard was a much more narrowly decided law. But the judge certainly apprehended that as a change in controlling law. There are a lot of contexts in which change in law changes in judicial interpretation matter. And we are generally pretty hesitant to allow people to get out of claims, admissions that they have raised based on subsequent changes in law. I can give you changes in interpretation. Criminal defendants oftentimes plead guilty. And then they oftentimes have appeal waivers, which means they can't appeal. And then a new precedent comes out. And the criminal defendants are like, this new precedent is really helpful. I didn't commit the crime. And I shouldn't be in prison. And we have precedent that suggests, well, you should have raised that or should have thought of that at the time you pleaded guilty. And the change in precedent, whether you call it change in law, I just think it's easier to say the change in judicial interpretation of the law is not an extraordinary circumstance to get you out of an appeals waiver. So why should we think it would be here? A few reasons, Judge Murphy. And first of all, I think taking your hypothetical, I'd like to distinguish it. Because in that case, the adjudication has been completed. Here we have something quite different. To your point, we have a subsequent filing. So now suddenly Mr. Reed refiles. And the state of law has changed. So why is it even a waiver? His question is about a waiver. So waivers are knowing and voluntary. And we usually honor those. But why was this a waiver? It's a fair point. And actually, I agree that it probably wasn't a waiver. What happened in 2009 was that, and it happens in all these black lung cases. And I think this is contextually important, is that ALJ solicit from the parties, OK, what are the remaining questions that are still in dispute? And they do that for purposes of economy and so on. And there's case law that says, well, when you admit that a question is no longer in dispute, then that's tantamount to a stipulation. Well, just go ahead. Do you think it is a stipulation? I mean, you've litigated this case as if it's a stipulation. So I'm kind of inclined to hold you to that. But is it a stipulation? It seems to me like it might not be. So it's a very interesting question. There are some cases, and I went back for this very purpose. There were some cases, many cases, in fact, in the black lung context, where they say, if you have withdrawn a contested question, as presented in Form 1025, at the ALJ's request, where the ALJ says, what are the remaining issues? Do you withdraw this? Do you withdraw that? Do you withdraw the responsible operator issue? There are some cases that I think with imprecision treat those as stipulations. Whether they are or not, I think, is a question for another day. Because in this particular case, it shouldn't matter. Because the stipulation. Why? Is there an option? Because all of this would go away if you just had the option of saying, we'll assume for the sake of argument that we're the responsible operator because he loses on this other ground. That just solves the whole problem. Is that an option? Can you say, we'll assume for the sake of argument that these three things are true. Take the four elements of a tort. We'll assume they've satisfied the other three. We're just going to contest causation in this hearing. Italicize this. That would solve all of this, wouldn't it? No, Judge, it wouldn't. And here's why. These are pitched battles that employers like my client undertake against two separate entities. And there's two primary questions. Does the guy have this terrible disease such that he should be entitled to benefits? That is a pitched battle between me and the claimant's attorney. On the other hand of that equation, we have a second question, which is, assuming this gentleman is found to have this disease totally disabled by pneumoconiosis, who should pay? And that is where the responsible operator question comes in. And that is a pitched battle between me and my colleague, Mr. Doyle. I still don't understand why the answer to my question isn't, today we're going to do a one front battle. We're not going to do a two front war. We'll assume for the sake of argument we're the responsible operator. Let's simplify things for the ALJ. Judges like that kind of thing. You're still telling me you can't do that. Because procedurally, after a hearing, the ALJ will say, what are the remaining contested questions? And if you withdraw one of those, it's forever withdrawn. Well, how do you not withdraw? So it is a waiver. It is a waiver. In this particular case, the ALJ, and if you go to page 29, it's in our supplemental appendix, 29, he says, at the end of the hearing, the issues that remain include, I understand that the responsible operator issue is being contested. The Department of Labor was there, and they said nothing about that. My predecessor was there. He agreed. Yes, in fact, that's being contested. And then for the first time, again, this is a notice problem, which is a due process issue. And particularly in the context of the APA, it's a problem. Stay focused on the waiver point. Everything you just told me makes me think, well, in this context, one really ought to think about this as a waiver. You can't assume away for the sake of argument something. And that's what it is. It's knowing, it's voluntary, and this was what people do. In 2009, during the prior claim, the state of the law was such that we were. Back to Judge Murphy's point, we don't worry about changes in law in waivers, generally speaking. Well, no. So at best, it's a stipulation. I don't think it's a waiver. I don't think it is. It was a challenge question that was withdrawn based on the state of the law in 2009, when the state of the law changed during Mr. Reed's. Did you say that? That gets back to my framing these concessions as saying, I mean, you could now make the concession, OK, fine, we'll stipulate to a responsible operator as long as the law stays this way. That's in your power. You can make it a conditional stipulation. No, Judge, again, and I don't fault you, because in all traditional trials and hearings, those sorts of things would be entertained. The way these proceedings happen is very quickly. It's a checklist type thing. And if there's no room for explanation, or hedging, or conditional, we would, but not if. Marching into the waiver camp. You're going to have to turn around and realize there's no way out. Well, again, the Black Lung Benefits Act, we've cited authority for this proposition. STICA is an example where prior, call them stipulations, withdrawn issues have been revisited. Again, the agency agrees to the fact, if there were exceptional circumstances and the judge did not apprehend whether this intervening change in law counted. Isn't the problem, so Chief Judge Sutton's hypothetical, I think you just simply can't do that, because the ALJ will take it as a stipulation. They interpret stipulation to be incredibly broad. If all you want to do is, I think I really have the key defense on this element. I'm not going to waste my time on these elements. I'm not going to stipulate that they're met. I'm just going to say, I'm going to focus on this. I'm not going to present any evidence on those, but I'm not stipulating. The ALJ will effectively say that's a stipulation and that you've waived those other ones for all time. And that's not the traditional view of waiver. Judge Murphy, I appreciate your question. I see my time is up, but I do want to address it in the context of my own experience in this scheme, which is precisely what you said. Judges are very quick to remove these issues from their consideration. But here, again, in 2021, April of 2021, the judge said the responsible operator issue is absolutely being contested. It's on the table. Nobody questioned that. Nobody gave it a second thought. Both of the parties addressed it on the merits in their brief. The Benefits Review Board addressed it on the merits in the brief. And I got it wrong, of course, because they said that this Shepard case was not in intervening change in law, not because of a narrower reading of that case, but because the regulation didn't change. And again, we use the Dobbs example and other examples to show that courts change the law all the time. That's what they're committed. That is within their Article III authority to do. And so again, everybody treated this as an issue that was open and live until the ALJ said, oh, by the way, I didn't give you notice, but I had misgivings about your ability to withdraw the stipulation. All right, we'll hear from the other side, and you'll get your full rebuttal. Thank you. Thank you, Judge. Doyle. May it please the Court. Your Honors, my name is Michael Doyle. I'm here on behalf of the Director, Office of Workers Compensation Programs. I'd like to address first a question that you asked my friend about, whether this is a waiver. And it is true, Judge Larson, that all of the parties, the board, the ALJ, treated it, used the term stipulation. And you see that in other cases, too, where concessions or waivers are sometimes a friction. I would not, so we're interpreting a regulation. And I would have interpreted stipulation, I went to Black's Law, and it said something about an agreement between the parties. What happened here was not an agreement. It was a refusal to put on evidence. It can be called a concession. It could be called an assent for the sake of argument. What's wrong with saying that that's not what stipulation means? And if stipulation actually means an affirmative acknowledgment that an element is met, then why wouldn't that take care of this and you lose? Because you overread the word stipulation. I guess I don't understand the question, Your Honor. So what they did here was not a stipulation. The regulation says stipulations are taken as a given in subsequent cases. And my point is, when I looked at what the business did in this case, they simply said essentially what Chief Judge Sutton suggested, which is we're just not going to present evidence on the responsible employer thing. Therefore, that's not a stipulation under an ordinary understanding, which I think is an agreement that it is affirmatively met. Well, just out of curiosity, are there letters or are there policy statements somewhere where you all have said stipulations do cover this? Or are we just reading the regulation by itself? I'm just reading the regulation. And the regulation isn't limited to stipulations, right? It also says, except those based on a party's failure to contest an issue, C-725-463. So regardless of how you characterize this. Can you read the whole passage? I'll read the entire subsection. Well, how many sentences? It's not that long. If the claimant demonstrates a change in one of the applicable conditions of entitlement, no findings made in connection with the prior claim, except those based on a party's failure to contest, will be binding on any party in the adjudication of the subsequent claim. However, any stipulation made by any party in connection with the prior claim will be binding on that party in the adjudication. You would say the answer to Judge Murphy's question is stipulations irrelevant in this case because they failed to contest an issue. Right. They didn't not only fail to contest it. They affirmatively said, we're taking this off the table. They withdrew the controversy. And in every black loan case, there are two primary issues. As Mr. Pusateri said, he's correct about that. Is there an entitlement to benefits? And then who should pay? Is there a liability for this designated responsible operator? They took that entire issue off the table. So it's not just a- But they did it in a different case. So is this an exception to claim preclusion? The exception to claim preclusion, yes. You get one bite at the apple once you litigate your claim. You cannot litigate the same claim. Right, so in black loan cases- So why is that even valid? Why wouldn't we interpret the- I think we interpret all statutes against normal rules of res judicata. And normal rules of res judicata include basic principles of claim preclusion. It seems like the DOL, through this regulation, has departed from those normal rules. And why wouldn't we say that that departure violates the statute because the statute adopts the normal- there's nothing in the statute that would suggest that it doesn't adopt the normal rules of res judicata. I mean, that's a very significant question you would not address in the confines of this case. But to answer the question, the Congress, through the Black Lung Act, has given the Department of Labor broad rulemaking authority. And it's the nature of the black lung disease that it is a latent and progressive disease. And what's going on with this regulation, the entire regulation, is that claimants have- the reason preclusion rules aren't strictly applied is because of that change. So, you know, we recommend- What about partial- what if we think about it in terms of issue preclusion? So I get the policy argument for this regulation. It makes perfect sense to me, to be fair, because I do agree with you that it's a latent disease. But if we thought about, maybe we should interpret C5 against the background of normal rules of the other type of preclusion, which is issue preclusion. And issue preclusion would never apply to something that was not necessary for decision in the prior case. And clearly, this was not necessary for decision in the prior case because the claimant lost on other grounds. But you would agree that issue preclusion wouldn't apply here either, wouldn't it? I don't know that it would apply or not. It's very likely that it may not apply. But all I can say in response is that, you know, this regulation went through notice and comment rulemaking. It was well within our authority to do it. But what's wrong with the notion that there's any room for ambiguity? I mean, you would agree that C5 has room for ambiguity because the board has long interpreted it against a backdrop that stipulations are not binding if extraordinary circumstances exist. But I wouldn't read that as an ambiguity. I would read that as, yes, that it is construed as- I mean, where would you get the extraordinary circumstances language out of this? You would read it in light of the, I mean, I think you would say that all that's going on here is that we're adopting a common rule within litigation that applies across civil litigation that had been applied before this rule was even enacted in Black- So if we're going to read it against the background rules of some extraordinary circumstances thing, why wouldn't we read it against the background rules of issue preclusion, too? I mean, that- Let me try and answer on that one. This reminds me a little bit of habeas. And this regime seems the least likely to think of through the lens of preclusion because all it's about is change. It's just everything goes the opposite way. It's the same as habeas. Everything goes the opposite way of issue, claim preclusion. You had your whole day in state courts. So I mean, I don't know. I guess what we're saying is there's a broad- Having said all that, I find this very strange that your position here is to say it's a, you know, whether you want to call it a stipulation of law, whatever, it does seem like a very strange thing to enforce down the road when they had a very good, fair-minded reason for not contesting something. I get what the regulation says, but it doesn't seem that odd to me to read a limitation into that reg. I mean, I'm a little skeptical that it's a preclusion point just because everything about the statute goes the other way. But I still find it strange to say so-called, you know, well, it's not stipulation. Whatever that phrase was, choosing not to contest. The way of the withdrawal of controversy. That that's binding for all time when the law changes. I mean, every administration, as you know, every time there's a different administration, they change the 15-year. I don't know if you've been in this for a career, but it must just, you know, every which way, you're turning the other way. Well, the 15-year hasn't, I take your point, it's true in a lot of instances. The 15-year, I would say that that, it has changed back and forth, but not, it hasn't been every administration. It hasn't been that much of a change back and forth. But it has, it was sunsetted, and then it was revived with the Affordable Care Act. That is true. But this is, I mean, if you look at the preamble of this regulation. What's the answer to the point that, you know, it doesn't say, you know, it doesn't deal with the changes in law problem. It seems to be primarily a fact-driven set of points. I mean, because if it said stipulations of law, that would, everyone would kind of wonder what's going on here, since that's unusual. Why isn't a way to read this, is this is really more about facts, and it's not necessarily about law? Is that possible? I mean, I know you don't want that, but I'm just, what's the reason that wouldn't be acceptable? Well, I'm not sure. I mean, in the Navistar case, this court did say stipulations of law are not enforceable. So, you know, I don't know that that's misreading this regulation. Well, but isn't that the question? Who is a responsible operator? Is that a question of law or fact? It's like probable cause, okay? So we saw these facts, but then does that add up to probable cause? That's a legal question. So isn't that really the question here? Is this a question of law or fact? Well, if it is a question, then I think it's quite clearly not a, it's not a pure question of law here. Well, what if it's a mixed question? And I think that's what it probably is, is a question of ultimate fact. We usually review those de novo, right? So then under Navistar, don't you have a problem? I don't think so, because here there's no, there's, in Navistar, there was a legal issue embedded in that finding of 17 years of coal mine employment, whether a mine inspector, whether that job is coal mine employment. Here, you don't have that. You have, at the very outset of the litigation, they withdrew this issue from the table. There might be 20 different legal issues that are embedded. They might not have raised the point of, these ALJs are inconsistent with Article III. I would say that's a stipulation to what Article III tolerates. I'm saying you can't then raise that issue later on, saying, well, having stipulated the responsible operator, you can't come later on and say, well, wait a minute, I wanna start litigating constitutional questions that may have been embedded in the responsible operator. My first instinct is, why not? Because ALJs aren't known for doing constitutional questions. Well, again, I mean, this is going well beyond this case, but I think that- I'm just, I'm using that line of argument for saying this regulation can't cover every legal point. Right? You would agree with me. I mean, I think we have some decisions in this court about ALJs and challenges to whether- Or appointments clause challenges and so forth. Exactly. Right. And we face those challenges, even though I'm quite confident it was not raised at the point this regulation was laid. Right, but you did hold them to waiver. You said that they can't raise that. I think it was the Joseph Forrester case. This court said that raising it for the first time, I don't know if it was before the board or before the Court of Appeals, that was a forfeiture of the argument by not presenting it to the ALJ in the first instance. Why is your aggressive reading of the regulation necessarily good for claims processing? And the reason I ask that is, if you're gonna really hold everybody to just not contesting something for all ends, no matter the circumstances, it seems to me it's only gonna encourage parties to litigate excessively the first time because they're so worried that they don't know what's gonna happen down the road. They recognize because anything that we don't vigorously litigate, we're gonna be doomed even if the circumstances develop later. And that's gonna, like on the front end, kind of force the ALJs to do a lot more work because they now have to contest all these issues whereas they might be willing to just say one or two key issues and not stipulate to it, just not say anything on it. So it's not clear to me why it's actually good for case management. I think in the first place when you're talking about responsible operator, you have to remember that the regulations are trying to channel all of the evidentiary development before the district director, before the case goes to the ALJ. But there was just no incentive to, the first time around, there wasn't really an incentive to litigate the responsible operator. I mean, this proves the point because the minor was suggesting that it wasn't even co-work. So the minor's own stipulation led them to think what's the point of litigating this? I think that's fanciful to think that a designated responsible operator is not going to litigate that issue because the minor is saying, well, I wasn't a co-worker. So you let the minor out of the stipulation but you didn't let the, it seems quite unfair to me. No, no, no, in fact, his application, now that I think about it, the genius move is to come in and say, got a serious lung disease, chain smoker, my doctor's report right here will establish this is caused by smoking, not black lung. Let's go through the process anyway, get the other side, not contest responsible operator, the other thing. And then, of course, they come back three, four years later and say, don't have to worry about that doctor's report anymore. I got this new evidence. By the way, they're the responsible operator. They've agreed to this, that, and the other thing. That's crazy. I mean, the claimant doesn't care whether he's the responsible operator or not. He's not, the claimant's getting paid regardless of who's paying the bill, whether it's the trust fund. No, but that's quite unfair to the coal company when they're looking at a totally frivolous claim. It's totally frivolous. My example is the guy comes in and affirmatively acknowledges that his problem is caused solely by smoking. If he did that. You still gotta run through this whole process and do your little rule stipulations. Well, right, the district, if he came in and he said that, the district director would probably deny benefits. Right, but then what about the four years later problem? That's what Chief Judge Sutton's trying to get at. Four years later, he comes in and he's like, oh, turns out it was black lung and don't worry about that doctor's report. Well, that's just the nature of black lung disease. I mean, different, it may have progressed. Right, but it creates incentives for the coal company not to litigate all the other issues because this one is frivolous, but now they're gonna have to litigate them all. I think in the history of black lung litigation, you don't see that. What you see is every issue being hotly litigated. We talked about pitch battles. It's always the case that every issue, and they know this regulation exists, right? They know that four years from now, if I had previously stipulated, I'm gonna be held to that stipulation in this, or at least they should know because it's here. Can I just ask one more question? So you don't see very many stipulations like this or non-contesting of issues? Is this just something that doesn't happen? This does happen. I don't know that completely taking the responsible operator issue off the table is all that common these days, but yes, issues get, withdrawals of controversy happen quite frequently in litigation, and once they happen, I think it is important that we hold to them, given the number of contested issues that ALJs, the number of cases that they have to resolve. I see I'm out of time, Your Honor. All right, thank you very much. We'll hear from Mr., is it Busateri? Yep. Looks like you've got three minutes. Thank you, Judge Sutton. Three quick points. First of all, with respect to this great question you raised about, is this a stipulation? Is it a withdrawal of a controversion? Are they the same? I just want to revisit what was actually said at the hearing in 2009 on appendix 224. It says, we are not contesting the designated. What year was this? This was in 2009. We are not contesting the designation of Kenlick as a responsible operator. I would submit that might be different than a more, a waiver or something tantamount to a stipulation. But that's the language also picked up by the reg. We're not contesting. That's right. And that's significant because, well, let me back up and talk about some of the, I think the substantive questions that you've raised and some of these sort of cultural problems you've raised. I would direct the court to the Stika case. And I know that it's an unpublished board decision, but I think it's very germane to this because we have two features there. First of all, we had the circumstance where the employer in 2002 withdrew controversion of whether the gentleman had pneumoconiosis. Then there's the subsequent claim. You mentioned the 15-year presumption. Now the 15-year presumption is back in play and the board is trying to assess what it should do with this withdrawn controversion in light of the new rules. And again, it speaks to the cultural problems, the chaos, because there was- What does it say? Well, what it said is that fundamental fairness and due process would require relief from even a formal stipulation made prior to the change in law. But what's even more interesting here is the- That's the board? That's what the board said. That's what the board said. And the change in law there, that was a change in the statute? It was a change in the 15-year presumption, which was part of the act. That's correct, Judge Murphy. And in that circumstance, what we had was that the parties couldn't even agree about what issue was controverted, because again, these things go by so quickly. And so was it pneumoconiosis in the abstract, or was it pneumoconiosis due to 17 years of coal mine employment? And they couldn't resolve the issue. They said, we don't even know if this was a controversion of one issue or the other, because the way these things happen culturally is so quick, so haphazard. Claimants, parties often have only 20 pages to file their closing- Why isn't that a potential answer here? We don't know if this was a failure to controvert factual points, legal points, and the ambiguity allows flexibility for the next stage. I think that's a fair point, Judge. And again, I don't think we should divine what was behind the ALJ's mind in 2021 when he was deciding whether to withdraw. That's a fact that he has to resolve again, but it is informed by his mistake of law. And again, there's a lot of authority here in administrative law. We don't sustain the right result for the wrong reason. We put it back to him to get it right. And I think that's what we have here is a circumstance where there are too many unresolved issues. There's clearly an error of law here that undergirded all of them. And remand is appropriate, and I think indeed necessary, setting aside these much broader questions of equity that you've raised, which include pages four to six of our reply. We talk about the inequity of allowing a minor to withdraw certain testimony without- I was gonna say, do you think the minor's check on the form that it wasn't coal mine employment qualified as a stipulation under the broad view of a stipulation? And so in some respects, the ALJ allowed one side to get out of a stipulation, but not the other? I can't, under the regulations, appreciate, or in the facts presented here, any meaningful distinction between what the minor testified to and spoke about in the prior claim about what wasn't part of coal mine employment and what the employer did in 2009, given its correct understanding of the law in place at the time that it withdrew that controverted assert. I think that's a fair question. Okay, thanks to both of you for your helpful briefs and oral arguments for answering our questions. We really appreciate it. Case will be submitted.